Per Curiam.

The controlling facts are not in dispute.
The relator and three others have filed nominating petitions as candidates for election to the office of mayor of the city of University Heights. No question is raised concerning the form, sufficiency or filing dates of the petitions.
The sole issue here presented involves the amount of the required statutory filing fee paid by three of the candidates.
Section 3513.261, Eevised Code, as amended, reads in part as follows:
“At the time of filing a nominating petition, the candidate designated therein shall pay to the election officials with whom it is filed a fee of one-half of one per cent of the annua] salary of the office for which such candidate desires to be a candidate *20 for election, but in no case shall the fee be less than one nor more than 50 dollars. * * *”
The amount of the fee paid by the relator was $45. The amount first paid by each of the other candidates was $33. This variation was due to confusion as to the correct amount of the salary of the office of mayor. It had been fixed at $6,600 per annum, and this was the amount being paid to the incumbent on August 7, 1957, the final filing date for nominating petitions. However, five weeks previously, on July 1, 1957, the council of the city of University Heights had adopted an emergency ordinance increasing the salary to $9,000 beginning January 1, 1958.
In January 1957, the respondent board of elections sent an inquiry to the clerk-treasurer of the council of University Heights requesting information concerning the municipal officials to be elected in the year 1957. Specifically requested was the amount of the salary to be paid each official. The respondent board was informed promptly that the salary of the mayor was $6,600. At that time this figure was correct. However, when the amount of the salary was subsequently increased to $9,000 on July 1, the respondent board did not receive a copy of the amended ordinance until more than a month later on August 5, and the clerk of the board did not become aware of the change until two days later on the afternoon of August 7, the final date for filing nominating petitions. In the meantime candidate Aurelius filed his nominating petition on July 16 and paid a filing fee of $33 — one-half of one per cent of $6,600. Candidate Skall filed his petition on July 29 and likewise paid a fee of $33, although he claims he offered to pay $45 — one-half of one per cent of $9,000 — but this was refused when he was told that the correct amount was $33. Candidate Elconin filed his petition during the forenoon of August 7, and he, too, paid a fee of $33. Finally on the afternoon of August 7, the relator filed his petition and paid a fee of $45 which was demanded because of the discovery of the salary change. That same afternoon the clerk of the board telephoned candidates Aurelius, Skall and Elconin, advising them of the mistake. Before the office of the board closed that day, Elconin appeared and paid the additional $12. Skall made his further payment of $12 on the following day. Aurelius paid two days later.
*21 Under the provisions of Section 2731.01, Revised Code, the purpose of a writ of mandamus is to compel the “performance of an act which the law specially enjoins as a duty resulting from an office.” Under the particular circumstances of this case, can it logically be said that the law “specially enjoins” on the respondent board of elections the duty to omit from the ballot the names of the three candidates who each mistakenly first paid a filing fee of $33 and then increased it to $45 when informed of the error?
Section 3513.261, above quoted, provides that the filing fee shall be “one-half of one per cent of the annual salary of the office.” The salary as of what date? The date the nominating petition is filed? The date the successful candidate will take office? The statute is silent with reference thereto. By mere inference the relator contends that it is the latter date, while the respondent with equal vigor infers that it is the former. What would have been the situation of a candidate who had filed his nominating petition before the salary was increased on July 1? And what would be the predicament of all candidates if the salary ordinance were amended again after the final filing date of August 7 ?
In view of the cumulative effect of this confusion as to both the law and the facts, was the Court of Appeals in error in refusing to hold that the law “specially enjoins” a duty on the respondent board of elections to strike the names of the three candidates, Aurelius, Skall and Elconin, from the ballot? Remembering that historically mandamus originated as a high prerogative writ involving the exercise of sound judicial discretion, this court is of the view that the judgment of the Court of Appeals was correct and that any other result would be unwarranted by the facts or the law.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Bell, Matthias and Herbert, JJ., concur.
Stewart, J., concurs in the judgment.